BRUNOT, Justice.
 

 This is a mandamus proceeding against the board of assessors for the parish of Orleans, the board of equalization for the parish of Orleans, and the Louisiana tax commission, to compel the cancellation of an assessment for the year 1933 of $130,000 on the machinery owned and used by the relator in the operation of its twine mill, a manufacturing enterprise, located on Poland street, in the city of New Orleans, in proximity to the Navigation Canal, on the site commonly known as Unit No. 1, one of the three units acquired by the United States from the board of commissioners, for the port of New Orleans in 1918, and used by the vendee as an emergency depot during the World War, but leased by the United States to the board of com
 
 *1010
 
 missioners for the port of New Orleans in 1922, who in turn leased it to the relator.
 

 It is alleged, and not denied, that the capital invested in the twine mill and the number of persons constantly employed in its operation largely exceeds the constitutional requirement, as a condition precedent' to the exemption of the machinery from taxation, but it is contended by respondents that there is no physical connection between Unit No. 1 and the Navigation Canal, and, for that reason, section 4 of article 10 of the Constitution of 1921, which relator invokes, does not apply to it. The pertinent part of the section is as follows:
 

 “Por a period of fifteen years from the date of the adoption of this Constitution, all buildings, fixtures and machinery used for manufacturing or commercial purposes, located on lands situated on the Navigation Canal leased from the Board of Commissioners of the Port of New Orleans; provided, no owner of such property shall be entitled to this exemption unless he shall have invested twenty-five thousand dollars or more in the physical property of such enterprise and keeps constantly employed at least twenty-five persons therein.”
 

 It is true that Unit No. 1 is not on the bank of the Navigation Canal, but it is in close proximity to it. It is also true that relator’s water shipments may be made from docks located on the Mississippi river at the confluence of the river and the canal, but relator is the lessee of the board of commissioners for the port of New Orleans, and its mill is served by all of the port facilities, including the Public Belt Railroad, which is a connecting link between the relator’s warehouse and the Galvez street wharf of the Navigation Canal.
 

 It may be true that while Units 1, 2, and 3 were used as an Army supply base during the World War, the United States government did not intend to use it in conjunction with the canal, but the board of commissioners of the port of New Orleans originally acquired the property for that purpose and, when the war ended, it immediately reacquired possession of it and leased it to relator for the purposes for which it is now being used. As far back as 1927, the Attorney General of Louisiana ruled that Unit No. 1 was exempt from taxation. At that time the Chase Bag Company occupied a portion of Unit No. 1, as lessee of the board of commissioners, and it was with reference to their exemption from taxation that the opinion of the Attorney General was sought by the Louisiana tax commission. We quote the opinion:
 

 “I note you say that the Commission is in doubt as to the law covering the question of such an exemption from taxation, by reason of the fact that the Army Supply Base is not owned by the Board of Commissioners of the Port of New Orleans, but is owned by the United States Government, leased to the Board of Port Commissioners and sub-leased by the Board of Commissioners to the Chase Bag Company.
 

 “The property occupied by the Chase Bag Company is located on lands situated on the Navigation Canal and is leased from the Board of Commissioners of the Port of New Orleans, just as the law provides. The question of ownership of the building does not determine as long as the Board of Commissioners lease the property for the purposes named
 
 *1012
 
 In the exemption clause of the Constitution, to the Chase Bag Company; this exemption squares exactly with the Article of the Constitution, and the exemption should be held valid, as provided.”
 

 For ten consecutive years, the respondents made no attempt to assess the machinery of the relator for the purposes of taxation, and their sole ground for resisting the cancellation of the 1933 assessment' is that there is no physical connection between Unit No. 1 and the Navigation Canal.
 

 The evident purpose of the framers of the Constitution was to encourage the location of manufacturing establishments, investing not less than $25,000 in capital, and employing not less than twenty-five people, on lands belonging to or in the possession of the board 'of commissioners of the Port of New Orleans.
 

 The learned trial judge made the writ of mandamus peremptory and ordered the cancellation of the assessment of relator’s machinery for the year 1933, and taxed the respondents with the cost of the proceeding. We think the judgment is correct, and it is therefore affirmed.